or please call the next gate three zero nine zero three four and re Estate of Joseph S. L. A. deceased at all called by Benjamin P. Hinck v. James Salamie and believed by Joseph T. Hine. Mr. Hinck Hi. Hi. Okay. Excuse us. You may proceed. May it please the court My name is Benjamin P. Hinck and we are representing Christine A. Salamie now known as Christine A. Scott The sole issue in this case is whether the failure of the executor to provide statutorily required notice to the petitioner told the statute of limitations, the filing period of the renunciation statute under the Illinois Corbett Act of 1975 The position of the appellant is that for over 50 years under the law of the state the jurisdiction in probate matters is obtained over heirs and legacies by the giving of notice by the mail in accordance with section 6-10 of the probate act or by publication in this case or by personal appearance. In this case there was no proper notice by mail there was no proper notice by publication. Where would you have sent proper notice by mail to your client if you wanted to do that? Well, I understand that the only address that they could have sent it to I think that would have been appropriate would have been her mother mother's address or they could have possibly sent it to the address in Naperville that was a residence that was sold. It was in Tennessee by the entirety. But didn't she testify she wouldn't actually stand at her mother's? That's true, that's true. She was not, she was terrified. She was not standing at one location. The suspect in the murder of her husband was not apprehended until August and she and her young child were in seclusion. They were hiding and it wasn't until they were until the suspect was arrested in August that she came forward. She then went to her mother's home and discovered the mail that she had there the notice that had been forwarded. It's at that time that she became personally aware of the admission of the will to probate. And from the day she became personally aware how long did she have under the statute to file a renunciation of the will? Assuming no tolling. She would have had seven months She would have had seven months from receipt of notice in this case Well the statute doesn't say receipt of notice does it? It says seven months after the admission of the will but our position is that Petter versus Host establishes that the entry of the order admitting the will to probate on June 13, 2007 was nullity as to the petitioner until she was afforded until there was jurisdiction over her. Until she appeared or until she was given statutorily required notice. So if somebody gets notice and they decide not to appear, probate court's hands are tied? No, the seven month period is wrong If the petitioner had received notice as required by section 6-10 then seven months after she received notice We disagree that the statute doesn't say seven months after you receive notice. That's not when the statute starts the time. That is the issue in this case. When does the seven month period begin? Let's go back to my original question and that was from the time she admits she had notice assuming no tolling of the statute, how long did she have from that date to go on and file the renunciation of the will? I think it was approximately five months Why didn't she do it? She didn't come to my office. She didn't meet me until after the seven month period ran. And this happens to people all the time personal injury cases and stuff A personal injury lawyer that advertises down in our town on TV every night wait one day too long and you're out of luck I'm thinking, you're looking for an equitable tolling here, remedy here, and when somebody's got almost five months why should equity step in in that situation? Well, the record reflects that the executor didn't make any serious attempt to get her notice The executor knew her cell phone number, talked to her both before and after the day before and the day after the death of her husband, Joseph Salome. He could have called her to find out what address did she want the notice set to. He could have made some additional efforts to inform her. He did not include in the affidavit of airship or in the order of airship her correct name. He didn't have an address and petition for her. There was no serious attempt to give her notice. She did find out within the seven month period of time. Did she ever use that name? No. The Brzezinski? No. Was it made up on a whole cloth? Yes. There's nothing that I'm aware of or in the record that would support the use of that spelling of that name. Did she even know somebody with that name? She didn't use that name. Or use that last name? No. Her maiden name was different. Brzezinski. It was spelled differently. She was married. She was using her married name. Her son was using Salome as the last name. So it's our position that the So her married name was Brzezinski? No Salome. Her maiden name was Brzezinski? Brzezinski. And we have Brzezinski. Right. And given the fact that the executor is her brother-in-law he was very much valid according to the record in the dissolution of marriage proceedings that preceded the untimely death of Joseph Salome. He was well aware of her name and knew how to get in touch with her. He chose not to. And what we perceive as the problem with this precedent is that if the rule is that the seven month period of time is a fixed period and it begins at the time of the entry of the order admitting the will to probate, well then any executor who wishes not to have her annunciation petition filed will merely not give notice. Well but you'd have had a different argument here wouldn't you if your client hadn't had notice almost five months before the time period. We'd have a different case in front of us then on whether equity required somebody to do something to help this person out. But in this case you've got somebody who by their own agreement had notice, had a copy of the will and had notice five months before the time told for them to do something to file an annunciation of the will. Well what she's seeking is a short tolling until she received that notice. There's no reason why she should be given less time to file her petition when the time that she's supposed to have is set by statute and it's based on notice being given to her in accordance with section 6-10. But wouldn't the executor's fault if she's out hiding? Well I think it is. I think it's the executor's fault for using the wrong name, not publishing. He could have published it. He didn't know where she was at. He could have published properly and that would have eliminated my client's argument. But he didn't publish. He didn't publish to the right person and didn't avail himself of that option under the act. We think that that's an important fact that courts should consider and should treat as a nullity the entry of the order on 6-13 until such time as the petitioner appeared or in this case we're merely asking that it be told until July 25, 2007 when notice was in fact sent of other proceedings filed on behalf of the estate in the divorce proceeding and the notice was sent to the home of my client's mother. My client didn't have notice of it at that time. But even if that as an earliest effort in good faith to inform the petitioner of the pending estate proceedings is treated as the commencement of the seven-month period of time, my client did file a retentiation petition within that seven-month period of time. The other cases that are certainly not very many cases to provide guidance to the court but the other cases, the Rosine and the Goodluck cases, clearly are cases where the surviving spouse appeared shortly after the commencement of the proceedings and certainly in those situations did not have an argument similar to my client's argument. This case, as far as I can tell, is the first case with this set of facts. We believe that the general principles that were articulated in Petter v. Host should be applied in order to prevent the possibility of executors avoiding the statutory scheme that is predicated on giving notice and obtaining jurisdiction over legatees and heirs in a certain proper fashion. I have no further arguments to make at this time. I'd ask that we still have time. There will be about five minutes for rebuttal. I have no further questions. Thank you. Mr. Monaghan, you may respond. Thank you, Your Honor. Good afternoon. My name is Joseph Monaghan. I'm here on behalf of James Salome, who is the appellee and who serves as the executor of his deceased brother's estate, Joseph Salome. The central question before the court is whether Christine Scott's will renunciation was untimely, as it was filed more than seven months after the admission of Joseph's will to probate. It is our position that the will is time-barred. We believe the trial court was correct when it entered summary judgment. Four factors support this position. First, the plain language of Section 2-8b-1 of the Probate Act. Second, decisions of the reviewing courts which have applied this section of the Act. Third, the conduct of the court. And fourth, the strong policy reasons why this court should support the plain language of the statute and reject the interpretation offered by the appellant. First, let's look at the plain language of the statute. Section 2-8b-1 provides, in order to renounce a will, the surviving spouse must file a written renunciation within seven months after the admission of the will to probate. The statute is unambiguous and states within seven months after the will is admitted to probate. The time limitation set forth in Section 2-8 is mandatory. There is no separate provision for notice in Section 2-8b-1 that the spouse before the seven months begins to run. It is clear language that is in the statute and this court must give effect without resort to tools of other statutory construction. If the legislature wanted the statute to run, as appellants suggest, when the spouse claims it received notice, they would have put it in the statute, but they did not. Section 2-8b-1 is a statutorily created right. It's not a right derived from the common law, and therefore it must be strictly construed. The statute also provides, under 2-8b-2, that if there is some reason that the spouse needs an extension of time, she can ask for that extension of time so long as it's done within the seven month period. It didn't happen here. We have cited in our brief cases which support this notion. Quad Cities Open, Inc. vs. City of Silvis. There the court said the trial court must give effect to the plain and clear language of the statute without resort to tools of statutory construction. Similarly, in Fredman Brothers Furniture Company vs. Department of Revenue, the court said statutes and declaration of the common law must be strictly construed. Section 2-8b is like a statute of limitations. The court does not have the authority or discretion to deviate from the statute. Appellants suggest that the court follow the Supreme Court holding in Pettiverse's Host. There, the Supreme Court said the renunciation period did not begin to run until after the receipt of notice of the mission of the will to probate, unless there was a showing that the surviving spouse had or from which estoppel could arise. Pettiverse's Host is inapplicable here. In Petta, as the court will recall, the husband abandoned the wife 20 years before he died. The wife in Petta didn't even know that her husband died until three years after the estate was closed. In Petta, the executor intentionally withheld knowledge of the widow's existence from the court. Not applicable to our facts at all. In our case, Christine knew of his death immediately. She had knowledge of the mission of the will to probate at least, as counsel has just admitted here again, five months before the tolling of the statute. She was listed in the and she admits that she hid her presence for at least three months. Just as the justice suggests, how do we give notice? Additionally, Pettiverse's Host is outdated. It was decided 20 years before our current probate statute was passed. It precedes the amendments of the Illinois Constitution in 1970, which made the probate court a court of general jurisdiction. The legislature, when it passed 28B2, was aware of the Petta decision and chose restrictive language that the will renunciation must be filed within seven months of the admission of the will to probate. As we cite in our brief, People v. Hickman, 163-02-250, it is presumed that the legislature acted with the knowledge of the prevailing case law. I look at Pettiverse's Host as bad facts make bad law. But when you compare the specific facts that are in the record here, you will know that Christine was aware of his estate plan. I ask the question because opposing counsel puts in a comparison of statutes from 45 up to the present. And what's the real difference? I think the real difference is that there was 10 months and now there's seven months. How does that go in derogation of the holding in Petta v. Host? Because the holding is dependent upon the court in Petta applying equitable principles in which they said, look at the facts. In Petta you have a woman who doesn't know where her husband is for 20 years. He gets married once. Well, I understand that, but you're implying that somehow the revision of the statute in 09 somehow does some violation to Petta v. Host? No, all I was suggesting, Your Honor, was that the legislature knew about Petta v. Host when they passed the statute. Right. Okay, but the only difference is the reduction from 10 to seven months, isn't it? Yes. And I think the difference is in Petta they had that provision that says about the estoppel happening and she knew and that's what I was just going to talk about the difference in the facts here. Well, that seems to be the stronger as opposed to, you know, we don't throw out good law like Marbury v. Madison on the 80th. I agree with you. Thank you. So here she was aware of the estate plan. In fact, she admits that she was there when he signed the estate plan. She took a copy of his estate plan when she left. She was aware of the size of the estate when she was married and she was aware of the size of the estate because she was engaged in domestic relations and he provided a list of assets there. She was aware of the death immediately upon the death because the family had to call her to give permission to release the body to the family. In spite of what counsel suggests, the executor here hired a private investigator to find him and the executor used the address that was provided by the private investigator to give her notice. He actually sent the notice that was given to him by the private investigator. Yes, there was an error in her name. It was phonetically spelled. But the notice also went to her son at the same address and that name was Solomon. She was sent notice of the petition to probate using the information that they had. Not only was she sent it to at once, the record shows that it was sent on June 1st, June 7th, and June 26th. And the topper of it all is that she admits that she received the notice at the place where it was sent. Well, she has to make that admission because she requested support from the estate. She did in September. She asked for support from the estate. So she admits she received the notice two days before she made the request for support, if I'm not mistaken. You are absolutely right. And I think we go back to the very first question that you asked, Your Honor, and that is, where should the executor have sent notice? Here the executor... How do you know she didn't get the notice when it was first sent in July? I don't know that. She's the one that claims she didn't get it until two days before she requested it. Exactly right. And so that's another reason why we have a seven-month statute of limitations that says we have the obligation to send notice. We were diligent in trying to find her. Even though she was hiding, we sent the notice there. And we also have in the record that after Joe died, she claimed Social Security benefits. And where did she have that Social Security benefit sent? To the Elmhurst address. Where did she have... She admits she receives letters and other things at that Elmhurst address, and ultimately as we all know, she receives our notice at that Elmhurst address. So, we also know unlike in PETA, that this was not a woman who was unaware of the probate proceeding. She closed on a townhouse that she owned with him in August. Again, well before the running of the statute of limitations. What month did she say she came out of hiding? August. So that was pretty quick, wasn't it? Yes, it was. Cases supporting our position that we do provide in our brief include the estate of Goodlatte. And there the trial court denied the will of renunciation because the spouse was aware of their death, because they were aware of the proceeding within the seven months, and the court specifically found that there was no attempt to defraud. One last question, I'm sorry to interrupt you again, any of this mail, the notices of the mail, any of them come back as undelivered or undeliverable? No, Your Honor. In Rosene, it also had the same thing. The spouse was aware of the death, they were aware of the probate proceedings within the seven month time period, there was no attempt by the executive to defraud or mislead, and the court found that there was no basis in which to extend the statutory seven month period saying that section 2-8 was mandatory, not directory. The Supreme Court in even in extreme cases where the defendant has frequently concealed information from the plaintiff, if the plaintiff still has a reasonable time to file with inaction within the statute of limitations period, there can be no tolling of the statute. Christine admits receiving notice on September 4th, that was close to five months before the statute told. She had plenty of time to file the will of renunciation or a petition to extend the time. She did not, and she gives no explanation of why she did this. She makes no equitable claim of asking for an extension of the time period. Finally, the public policy argument. There is no such action in the common law thus the statute must be strictly construed based upon its language. The start of the seven month period is from the date of admission to the will. Thank you. Isn't there necessarily a little bit of delay any time the surviving spouse is served with notice of the will has been admitted to probation? I'm sorry. Isn't there always necessarily just a little bit of delay in getting a notice for surviving a spouse? Yes, and I think that's why they give a seven month period. And if we don't give that seven month period, you know, there's going to be such delay and chaos in the admission. But if it's from the date of service, let's say it takes a week in an ordinary case to get a surviving spouse served. To adapt the position argued here, everybody would get just a little bit more than seven months. I agree with you on that. Thank you. This was independent administration? It was independent administration and subsequently was changed to supervised administration. Was there a claims notice? Yes, there was. But did they combine notice to unknown heirs and legacies as well? I honestly cannot remember. I believe there was, but I don't want to miss the record. Thank you very much. Mr. Hyatt, you may reply. With respect to the reference to the act of 1945 being virtually exactly the same as the current act, I think that it's important to note that the legislature did not amend the 1975 act. And I think that it reaffirms Cutter v. Host with respect to the concept of jurisdiction being obtained by the giving of notice pursuant to section 6-10. That that is required in order to go forward and to hold the petition, in this case, to the time frame that until that is done there's no jurisdiction over her. Well, if we go down your road, all the widow or whatever the person's got to do is say, didn't get it until I was in such grief that I went to Las Vegas for six months and I came back and I saw it and only had a month left. All I had to do was say, I wasn't there where I ultimately got the notice, wasn't there, didn't open the mail, too sick to open it. Well, listen, there's no dispute that there was never notice given to her from her name. Her name was Salome, Christine Salome. There was no notice sent to her. There never has been compliance with the act, never under any circumstances. If the entire statutory scheme of the act is not held together for other situations like contesting a will, six months to contest a will, other statutory time frames to assert a widow's award, other benefits, if it is not a requirement that the executor give notice to those individuals that have those rights before those rights can be extinguished for delay. Well, when she read that, when she was taking her word, when she read this in September, she knew who they were talking about, right? She understood by September 1 that there was a probate estate. She didn't understand pronunciation. And what the probate act is really about is actual notice, correct? At the end of the day, that's what counts. I would believe that's true. Actual notice. And our position is that even if July 25th is treated as actual notice, notice received by her mother at her mother's address, even though she didn't see it until September 1, even if that's treated as the beginning of actual notice to my client, then she filed within that period of time. She filed within seven months of receiving that actual notice. But the statute says from seven months from the time the will is admitted to probate. Well, that's all. It is our position that that statutory time frame as well as others within the act do not begin to run until notice to the party that's restricted by the time frame. That's why you rely on peta versus host. Yes. Because there's no difference between those two statutes. Yes, correct. And if there are no questions, then I will just ask that for all the reasons set forth in our brief and in our reply brief and set forth today that the ruling of the trial court be reversed and this case be remanded proceeding consistently with the court's ruling. Thank you. Thank you, Mr. Heine. Thank you, Mr. Monahan, as well. Thank you both for your arguments in this matter this morning, or this morning, it seems like it, early morning, this afternoon. The matter will be taken under advisement.